**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **AMBER HUMPHREY, FKA AMBER HORVATH, on behalf of herself and all others similarly situated,** | CASE NO. 1:18-cv-01050 |
| Plaintiff, | |
| v. | UNITED STATES DISTRICT JUDGE JAMES S. GWIN |
| **STORE VALUE CARDS, INC (d/b/a NUMI FINANCIAL),** | |
| Defendant, | |
| and | |
| **REPUBLIC BANK & TRUST COMPANY,** | |
| New Party Defendant. | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Now comes the Plaintiff, Amber Humphrey ("Humphrey"), f/k/a Amber Horvath, on behalf of herself and all others similarly situated (the "Class Members"), and for her First Amended Class Action Complaint alleges the following claims:

**NATURE OF THE ACTION**

1.      This class action challenges the issuance and distribution of pre-activated debit cards, fees charged by Defendants Republic Bank & Trust Company ("Republic") and Stored Value Cards, Inc. (d/b/a Numi Financial) ("Numi Financial") (together "Defendants") to individuals who were taken into custody by law enforcement officials, and the fees charged by Defendants in connection therewith.

2.      Humphrey and the Class Members seek declaratory and injunctive relief along

with disgorgement of those fees that Defendants have collected through their unlawful practices together with all other actual damages, statutory damages, penalty payments, and costs of this action, including reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action as it was removed from the Lorain County Court of Common Pleas pursuant to 28 U.S.C. § 1441 given the claim that Defendants violated the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq*.

4.     Venue is appropriate because a substantial part of the events giving rise to the claims occurred in the Northern District of Ohio.

## PARTIES

5.     Plaintiff Amber Humphrey is a citizen of the State of Ohio who resides in Lorain, Ohio.

6.     Defendant Stored Value Cards, Inc. (d/b/a Numi Financial) is a California corporation with its national headquarters in Carlsbad, California. Numi Financial is a provider of debit card processing services for disbursement of inmate funds on behalf of law enforcement agencies in the State of Ohio.

7.     Defendant Republic Bank & Trust Company is a national banking association headquartered in Louisville, Kentucky and provides banking and financial services and products, including pre-activated debit cards, to consumers and businesses throughout the United States.

8.     Defendant Numi Financial issued pre-activated debit cards through, and in partnership with, Defendant Republic Bank & Trust Company.

## COMMON ALLEGATIONS OF FACT

9.     The ever-growing prisoner population in the State of Ohio and throughout the

2

United States is a well-documented source of concern.[1]

10.     While privately-run correctional facilities that obtain large government contracts and avoid compliance with state and federal regulations are the most well-known example of this, a number of companies have recently pursued other business ventures that also seek to profit directly from individuals who are being held in the custody of law enforcement agencies.

11.     Seeing an opportunity to profit from a previously untapped source of revenue – the processing of confiscated funds when an individual is taken into custody and subsequently released – Defendants developed a pre-activated debit card scheme that they marketed to detention facilities throughout the United States.

12.     Specifically, whenever an individual is taken into custody for any period of time, regardless of the type or severity of the charged crime, and regardless of whether they are later released or found not guilty, they go through a booking process whereby their property, including any clothes, money, and other possessions on their persons, are taken from them, and stored until their release.

13.     Until very recently, most local jails and larger correctional facilities would collect any cash money that an individual had on them, and upon release would either provide that same exact amount back in either cash or a check to be cashed.

14.     Defendants' service purports to offer law enforcement officials a more streamlined process for processing inmate funds by automatically providing a pre-activated debit card containing all of the funds owed back to the inmate upon his/her release.

15.     When an individual is booked at a detention facility utilizing Defendants' service, he/she is required to surrender his/her cash funds to the law enforcement officials.

---

[1] On June 15, 2017, the Ohio Criminal Justice Recodification Committee submitted a comprehensive plan in bill form overhauling the Ohio Criminal Laws in order to allow the state to release hundreds of inmates: http://ocjrc.legislature.ohio.gov/Assets/Files/final-lsc-draft.pdf (last visited September 22, 2017)

4830-6035-1592, v. 2

16.     Once the individual's funds are surrendered, they are transferred to an inmate trust account which they can use during their time in custody to buy certain items, make telephone calls, or send emails. Inmates are also permitted to add funds to their inmate trust account while in custody.

17.     Upon release, whatever funds are remaining in the inmate trust account are deposited onto a "pre-activated" debit card issued by Defendants.

18.     However, unlike prior methods of disbursing funds by cash or check, the debit cards provided by Defendants come with an array of fees and other charges – including ATM fees, maintenance fees, and purchase transaction fees – that are automatically deducted by Defendants without the individual's authorization consent.

19.     Indeed, the pre-activated debit cards are issued to inmates without the inmates ever having requested the cards or authorized their issuance.

20.     Defendants purport to require that jailers provide written terms and conditions to each inmate upon release, which allegedly describe among other things, the fees to be charged by Defendants.

21.     But Humphrey never received any such documentation, and upon information and belief, the documentation is never provided to Class Members.

22.     Moreover, even if the documentation would be provided in limited circumstances, it could only be done *after* the inmate's funds have been loaded onto a pre-activated debit card, and Class Members have no way to reject the debit card, let alone any terms or conditions associated with it.

23.     The fees charged by Defendants can vary in the amounts deducted from the inmate trust account funds deposited onto the card. Typical fees automatically deducted by

4

Defendants can include a $2.50 **weekly** service fee, a $0.95 fee for each declined transaction, and transaction fees as high as $2.95 for **each** purchase made with the card.

24.     No account terms, financial information, explanation of legal rights, card holder agreement, or other documentation is provided to the inmates either before or at the time they receive the cards.

25.     Most importantly, individuals detained at the local jails, correctional facilities, and other institutions that utilize Defendants' debit card service are not given any alternative option other than receiving their funds back in the form of a pre-activated debit card issued by Defendants and are effectively coerced into accepting the pre-activated debit cards without their consent.

26.     These individuals are put in the unenviable position of having unauthorized, excessive maintenance, service, and other fees automatically taken from their own funds, even though such individuals have not entered into any contract with Defendants, have not voluntarily deposited their funds with Defendants, and have no notice of the fees being charged.

27.     Worse, Defendants' debit card service is used by numerous jails and other detention facilities in the United States, and Defendants provide thousands of pre-activated cards a year to individuals detained at their customers' facilities.

<u>**FACTS SPECIFIC TO NAMED PLAINTIFF**</u>

28.     Amber Humphrey was jailed at the Lorain County Jail, located at 9896 Murray Ridge Road, Elyria, Ohio 44035, in September 2017.

29.     Humphrey entered the Lorain County Jail with approximately $50.00 in cash, which was placed in her inmate trust account.

30.     Humphrey had approximately $30.00 remaining in her inmate trust account when

5

she was released in late September 2017.

31.     Rather than return Humphrey's cash as she would have preferred, the Lorain County Jail provided her with a NUMI pre-activated card without permitting any alternatives for the return of her money.

32.     Humphrey was not provided any account terms, financial information, explanation of legal rights, card holder agreement, or other documentation before or at the time she received the card.

33.     As a result, Humphrey incurred excessive "service" fees from Defendants on the pre-activated card just to access her own funds.

34.     Like the tens of thousands of other former inmates, Humphrey had no choice or bargaining power other than receive her money on the NUMI pre-activated card upon release.

35.     Humphrey and the putative class represent an involuntary market of consumers forced to accept the return of their money on these pre-activated cards.

## CLASS ALLEGATIONS

36.     Humphrey brings this action on behalf of the Class initially defined below:

> All persons in the United States who were taken into custody at a jail, correctional facility, detainment center, or any other law enforcement facility, and upon release were given a pre-activated debit card containing any funds remaining in their inmate trust account and from which Defendants deducted any fees within six years prior to the filing of the original Complaint in this action.

37.     Upon information and belief, the Class exceeds 60,000 members. The Class Members are so numerous that joinder of all members is impracticable.

38.     There are questions of law and fact common to the Class.

39.     Humphrey's claims are typical of the claims of the other Class Members as all Class and members are similarly affected by the Defendants' conduct.

6

40.     Humphrey will fairly and adequately protect the interests of the Class Members and has retained counsel competent and experienced in complex litigation.  Humphrey is a member of the Class and does not have any interests antagonistic to or in conflict with the members of the Class.  Humphrey's claims are the same as those of the Class which all arise from the same operative facts and are based on the same legal theories.

## FIRST CAUSE OF ACTION
### (Conversion)

41.     Humphrey incorporates by reference the foregoing allegations as if fully set forth herein.

42.     Upon being taken into custody, Humphrey and the other Class Members had all cash in their possession deposited into an inmate trust account.

43.     Upon release Humphrey and the other Class Members were forced to have any funds maintained in their inmate trust account deposited onto Defendants' pre-activated debit cards for disbursement.

44.     At no time did Humphrey and the other Class Members enter into any contract or agreement with Defendants, provide consent to have their funds deposited with Defendants, or agree to have any fees deducted from their funds by Defendants.

45.     Nonetheless, Defendants have deducted various fees from Humphrey's funds, as well as the funds of the other Class Members, and have permanently and wrongfully deprived Humphrey and the other Class Members of those funds.

46.     Defendants never had a legal right to retain any portion of Humphrey's and other Class Members' inmate trust account funds, and by retaining fees deducted from such funds, Defendants have unlawfully converted a portion of such funds.

47.     Defendants' unlawful acts of conversion have caused actual damages in the

7

amounts of the unauthorized fees converted by Defendants—in addition to interest thereon. Defendants' actions were also oppressive and malicious, such that Humphrey and the Class Members are entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment)

48.    Humphrey incorporates by reference the foregoing allegations as if fully set forth herein.

49.    Even though Humphrey and the Class Members had never entered into any contract with Defendants, never consented to have their funds deposited with Defendants, and never agreed to any fees being deducted from their funds by Defendants, Defendants nonetheless deducted unauthorized fees from Humphrey's and the Class Members' inmate trust account funds that were deposited with them.

50.    Because Defendants deducted fees from Humphrey's and the Class Members' accounts without any consent or authorization, exploited their position of advantage over such individuals who had no choice but to have their funds deposited with Defendants for disbursement, it would be inequitable and unjust for Defendants to retain these wrongfully-obtained funds.

51.    Humphrey and the other Class Members have been harmed as a result of Defendants' unlawful and inequitable conduct and are entitled to restitution in the amounts of the unauthorized fees taken by Defendants together with any interest earned by Defendants on the funds unlawfully seized from Humphrey and the Class Members.

## THIRD CAUSE OF ACTION
### (Violation of the Electronic Funds Transfer Act, 15 U.S.C. §1693 *et seq*.)

52.    Humphrey repeats and realleges the allegations contained in the paragraphs

8

above, as if fully set forth herein.

53.     This cause of action is brought pursuant to the provisions of the Electronic Funds Transfer Act, 15 U.S.C. §1693 *et seq*. and the Federal Regulations promulgated thereunder ("EFTA").

54.     The "primary objective" of the EFTA is the "provision of individual consumer rights" regarding electronic fund and remittance transfer systems. 15 U.S.C. §1693(b).

55.     An "electronic fund transfer" includes "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account." 15 U.S.C. §1693a(7).

56.     Humphrey and the Class Members are consumers, and Defendants are financial institutions as defined by the statute.

57.     EFTA requires that the "terms and conditions of electronic fund transfers involving a consumer's account shall be disclosed at the time the consumer contracts for an electronic fund transfer service," including:

    a.   The consumer's liability for unauthorized electronic fund transfers;

    b.   The telephone number and address of the person or office to be notified in the event the consumer believes that an unauthorized fund transfer has been or may be effected;

    c.   The type and nature of electronic fund transfers which the consumer may initiate, including any limitations on the frequency or dollar amounts of such transfers;

    d.   Any charges for electronic fund transfers or the right to make transfers;

    e.   The consumer's right to stop payment of a preauthorized electronic fund transfer and the procedure to initiate a stop payment;

    f.   The consumer's right to receive documentation of electronic fund

transfers;

g.  A summary of the error resolution provisions, and the consumer's rights thereunder;

h.  The financial institutions liability to the consumer under EFTA;

i.  Under what circumstances the financial institution will disclose consumer account information;

j.  Notice to the consumer that a fee may be imposed by:

i.  An automated teller machine; and
ii.  Any national, regional, or local network utilized to effect the transaction; and

k.  Any other disclosure required by the statute or regulations.

58.  EFTA prohibits financial institutions and others from issuing to a consumer any card, code, or other means of access to such consumers account for the purpose of initiating an electronic funds transfer other than: (1) in response to a request or application therefor; or (2) as a renewal or substitution of an accepted card.

59.  Financial institutions and others are prohibited from distributing cards, codes, or other means of access for use in initiating electronic funds transfers to consumers *unless*: (1) the card, code, or other means of access is not validated; (2) such distribution is accompanied by a complete disclosure of the consumer's rights and liabilities as identified in Paragraph 52 above; (3) such distribution is accompanied by a clear explanation that the card, code, or other means of access is not validated, and how the consumer may dispose of the card, code, or other means of access if validation is not desired; and (4) such card, code, or other means of access is validated only in response to a proper request or application from the consumer.

60.  For purposes of the EFTA, a card, code, or other means of access is validated when it may be used to initiate an electronic fund transfer.

10

61.     No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by the EFTA.

62.     Under the EFTA, injured consumers are entitled to recover actual damages, additional amounts depending on whether claims are pursued individually or on a class basis, and the costs of litigation, including reasonable attorneys' fees.

63.     The EFTA specifically contemplates consumers' pursuit of claims on a class-wide basis.

64.     Violators of the EFTA are subject to a criminal fine of not more than $5,000.00 or imprisonment of one year or less, or both.

65.     Defendants have committed multiple violations of the EFTA.

66.     The pre-activated debit cards Defendants issued to Humphrey and the other Class Members are electronic fund transfer cards as defined in the EFTA.

67.     Defendants issued Humphrey and the Class Members pre-activated debit cards that were not renewal or substitute cards, without any application or request for the same by Humphrey or the Class Members.

68.     Defendants issued the pre-activated debit cards to Humphrey and the other Class Members without the required financial disclosures, including but not limited to: any charges for electronic fund transfers or the right to make transfers; the consumer's right to receive documentation of electronic fund transfers; Defendants' liability under the EFTA; notice of ATM and network fees; and other disclosures.

69.     Because the debit cards issued to Humphrey and the other Class Members were pre-activated and loaded with their funds, the unsolicited cards were validated, in violation of the

EFTA.

70.    Because the pre-activated debit cards issued to Humphrey and the other Class Members were already validated, Defendants failed to deliver to them a clear explanation that the cards were not validated, or how to dispose of the cards without validation, in violation of EFTA.

71.    The pre-activated debit cards issued to Humphrey and the other Class Members were validated without their request or application, in violation of EFTA.

72.    As a direct and proximate result of these and other breaches of the EFTA by Defendants, Humphrey and the other Class member have suffered and continue to suffer damages, and seek the remedies provided by 15 U.S.C. § 1693m, including but not limited to: actual damages, additional amounts permitted by statute, and costs of this action, including reasonable attorneys' fees.

**WHEREFORE**, Humphrey, on behalf of herself and all other similarly situated, prays for the following relief:

1.    An order certifying the Class defined above;

2.    A determination that Defendants' conduct as alleged herein is unlawful and/or unfair;

3.    An award of all damages provided by 15 U.S.C. § 1693m;

4.    An award to Humphrey and the Class of actual, compensatory, and punitive damages, as proven at trial;

5.    An order disgorging all profits earned by Defendants from the conduct described above;

6.    An award to Humphrey and the Class of restitution of all monies deducted by

Defendants;

7.     An order enjoining Defendants from engaging in the business practices described

herein;

8.     An award to Humphrey and the Class of reasonable attorneys' fees, costs, and

pre- and post-judgment interest; and

9.     Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Humphrey demands a jury on all issues so triable herein.

/s/ Matthew A. Dooley
Matthew A. Dooley

Respectfully submitted,

O'TOOLE, McLAUGHLIN, DOOLEY
& PECORA, CO., LPA

/s/ Matthew A. Dooley
Matthew A. Dooley (0081482)
Ryan M. Gembala (0079431)
Stephen M. Bosak, Jr. (0092443)
5455 Detroit Road
Sheffield Village, Ohio 44054
Telephone:     (440) 930-4001
Facsimile:     (440) 934-7208
Email:          mdooley@omdplaw.com
                rgembala@omdplaw.com
                sbosak@omdplaw.com

Matthew B. Ameer
Laribee & Hertrick, LLP
325 North Broadway Street
Medina, Ohio, 44256
Telephone:  330–725–0531
Facsimile:  330–725–0666
E-mail:  mameer@laribee-hertrick.com
*Counsel for Plaintiff*

13

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this July 11, 2018, I caused the foregoing to be filed using the

U.S. District Courts CM/ECF Electronic Filing System, which will electronically serve a copy of

such filing upon all counsel of record.

/s/ Matthew A. Dooley
Matthew A. Dooley
*Counsel for Plaintiff*

4830-6035-1592, v. 2