UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------

|  |  |
|---|---|
| AMBER HUMPHREY, *on behalf of herself and the class*, | : |
| Plaintiff, | : CASE NO. 1:18-CV-1050 |
| vs. | : OPINION & ORDER<br>: [Resolving Doc. 32] |
| STORED VALUE CARDS, D/B/A NUMI FINANCIAL, *et al*. | : |
| Defendants. | : |

------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Amber Humphrey brings this class action complaint against Defendants Stored Bank Cards, doing business as Numi Financial ("Numi"), and Republic Bank & Trust Company ("Republic"). Plaintiff alleges that Defendants wrongfully issued unsolicited and activated debit cards to her and class members. Plaintiff says this distribution of unsolicited and activated debit cards was illegal and caused plaintiffs to suffer fees they had never agreed to.

Plaintiff now moves to certify three classes: a nationwide class for Plaintiff's claims under the Electronic Funds Transfer Act ("EFTA"),[1] and two Ohio classes for Ohio law conversion and unjust enrichment claims.[2]

For the following reasons, the Court **GRANTS** Plaintiff's motion to certify the proposed classes.

---
[1] 15 U.S.C. § 1693 *et seq.*
[2] Doc. 32. Defendants oppose. Doc. 42. Plaintiff replies. Doc. 46.

## I. Background

When an Ohio jail or correctional facility takes an individual into custody, the arrestee must surrender their cash. The correctional facility holds the arrestee's funds in an inmate trust account. While incarcerated, the inmate can use these funds to purchase commissary items, make telephone calls, and send emails.

After release from incarceration, many facilities do not return the inmate's cash or give the inmate a check for the inmate trust account balance. Instead, the correctional facility deposits the inmate's money to a bank account and gives the former inmate a debit card. The inmates do not ask to establish the bank account and do not ask that the correctional facility give them the debit card.

These cards carry high fees. When the Lorain County Jail released Plaintiff Humphrey, she had a roughly $30 trust account balance. Within five days the bank who issued the debit card began charging her a $5.95 per month maintenance charge and began charging her $2.95 for each ATM withdrawal she made and charged her $1.50 for each balance inquiry she made.

### A. Plaintiff Humphrey

Plaintiff Amber Humphrey alleges that Lorain County incarcerated her in September 2017. When jailed, Lorain County took approximately $50 cash from her and put her cash into a jail trust account. She used some of her money for commissary purchases but $30 remained in her inmate trust account at the time Lorain County released her.

At release, Humphrey alleges that Lorain County did not return her cash but instead issued her a Numi debit card issued by Defendant Republic. She claims that, without her

Case No. 18-CV-1050
Gwin, J.

permission, her remaining funds were put in a Defendant Republic account.[3]

Plaintiff Humphrey alleges that she did not request the card and that neither Lorain County or Republic gave her any notice of account terms, financial disclosures, or other documentation.

Plaintiff Humphrey also alleges that Republic charged her extremely high fees for using the card. She says Republic charged her a $2.50 weekly service fee, a $0.95 fee for each declined transaction, and transaction fees as high as $2.95 for each purchase made.[4] Republic charged these fees even though the account had a scant $30 in it when Republic took possession of Humphrey's money. Humphrey says she never agreed to the Republic fees.

Defendants do not claim or give evidence that Humphrey received any cardholder agreement. Instead, Defendants contend that correctional institutions usually provide account terms and conditions to inmates upon issuance.[5] Defendants argue that its contract with Lorain County Jail obligated Lorain to furnish the cardholder agreement.[6] Defendants have also submitted training materials and emails instructing correctional institutions to provide the cardholder agreement to inmates when the correctional facility issued debit cards.

## B. The Proposed Classes

Plaintiff moves to certify three classes. The first is a nationwide class under EFTA:

---

[3] Plaintiff alleges that Defendant Numi provided debit card processing services for her card, which were issued through Defendant Republic. She also alleges that Defendant Republic maintained the account holding the card's funds. *See* Doc. 1-1 at ¶¶ 5-7.
[4] The cardholder agreement included as Exhibit A to Plaintiff's motion for class certification, which Plaintiff claims is the agreement for her card, has a different fee schedule. It lists, among other fees, a $5.95 monthly maintenance fee, a $2.95 ATM withdrawal fee, and a $1.50 balance-inquiry fee. *See* Doc. 32-3. The Court understands that Plaintiff obtained this document via a Freedom of Information Act request to the Lorain County Jail.
[5] *See* Doc. 42-5 and the attached exhibits.
[6] *Id.* at 2.

Case No. 18-CV-1050
Gwin, J.

> All persons in the United States who were taken into custody at a jail, correctional facility, detainment center, or any other law enforcement facility, and upon release were issued a pre-activated debit card by Defendants to access a bank account containing any funds remaining in their inmate trust account within one year prior to the filing of the original Complaint in this action and during its pendency.

Plaintiff also moves to certify two classes under Ohio law. The first class makes Ohio conversion claims:

> All persons in Ohio who were taken into custody at a jail, correctional facility, detainment center, or any other law enforcement facility, and upon release were issued a pre-activated debit card by Defendants containing any funds remaining in their inmate trust account and from which Defendants deducted any fees within four years prior to the filing of the original Complaint in this action and during its pendency.

The second class makes Ohio unjust enrichment claims:

> All persons in Ohio who were taken into custody at a jail, correctional facility, detainment center, or any other law enforcement facility, and upon release were issued a pre-activated debit card by Defendants containing any funds remaining in their inmate trust account and from which Defendants deducted any fees within six years prior to the filing of the original Complaint in this action and during its pendency.

## II. Discussion

### A. Legal Standard

Federal Rule of Civil Procedure 23 governs class action lawsuits. A court may only certify a class action if it satisfies all Rule 23 requirements.

Rule 23 "does not set forth a mere pleading standard."[7] Rather, the district court must conduct a "rigorous analysis" to ensure that any class action satisfies the Rule's requirements, which may "overlap with the merits of the plaintiff's underlying claim."[8]

---

[7] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).
[8] *Id.* at 351.

-4-

Case No. 18-CV-1050
Gwin, J.

However, Rule 23 does not license courts "to engage in free-ranging merits inquiries at the certification stage."[9] Courts should only consider the merits insofar as "they are relevant to determining whether Rule 23 prerequisites for class satisfaction are satisfied."[10]

**B. The Proposed Classes Meet Rule 23(a)'s Requirements**

Defendants' primary argument against class certification is that Plaintiff's claims are not legally cognizable.[11] Defendants contend that the class cannot be certified because "[c]ertification of a made-up legal claim is untenable."[12]

This argument misses the mark entirely. Defendants' objections to class certification—that 15 U.S.C. § 1693i and § 1693l–1 do not apply to the card given Humphrey, and that Plaintiff's EFTA claim requires demonstration of a written agreement under 12 C.F.R. § 1005.3(a)—unintentionally demonstrate the benefits of class treatment. These purely legal issues are precisely appropriate for aggregate resolution.

Merits inquiries are only relevant at class certification where the merits decision impacts the case's fitness for class adjudication. A court may need to consider factual disputes, for example, where they bear on the availability of class wide proof.[13] Similarly, a court may need to probe the legal merits of the parties' claims to determine which

---

[9] *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)
[10] *Id.*
[11] The cases that Defendants muster for this proposition are neither binding nor persuasive. *Rader v. Teva Parental Meds., Inc.*, a District of Nevada case, mentions that a *different* Nevada district court had refused to certify a class where the underlying claims were not recognized under Nevada law. 276 F.R.D. 524, 577-78 (D. Nev. 2011). But the court also mentions that the referenced decision had "specifically concluded" that "even assuming that the medical testing claims were cognizable under Nevada law, such claims were inappropriate for class certification because testing costs varied widely between the putative class members." *Id.* The other case, a Western District of Texas bankruptcy court decision, cites no case law in support of its conclusion that "it would be improper to certify a class action under a legal theory which is not cognizable." *In re Mounce*, 390 B.R. 233, 241 (Bankr. W.D. Tex. 2008).
[12] Doc. 42 at 7.
[13] *See Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (holding that district court should have probed the merits of Plaintiffs' damages model, because an arbitrary or speculative damages model would defeat predominance); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (holding that commonality requirement was not met, because plaintiffs had failed to propose a theory which would plausibly account for employment discrimination on a classwide basis).

litigation issues are involved. Defendants, in contrast, simply present reasons why the case should be dismissed for failure to state a claim. These arguments may, or may not, succeed but are irrelevant for class certification.

### (i) Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."[14] While there is no "strict numerical test"[15] for this requirement, courts generally find that forty or greater plaintiff classes "raise[] a presumption of impracticability of joinder based on numbers alone."[16]

Here, Defendant Numi identifies 75,776 Ohio individuals who were given debit cards after release from correctional facilities since April 3, 2012. The Numi responses also indicate that Defendant Republic issued cards to 5,621 Ohio individuals. The proposed classes satisfy the numerosity requirement.

### (ii) Commonality

Rule 23(a)(2) requires that "there are questions of law and fact common to the class."[17] This commonality requirement is satisfied where the common contention "is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[18] In other words, "[w]hat matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate

---

[14] Fed. R. Civ. P. 23(a)(1).
[15] *Daffin v. Ford Motor Co.*, 458 F.3d 549, 553 (6th Cir. 2006).
[16] *Pund v. City of Bedford, Ohio*, No. 1:16CV1076, 2017 WL 3219710, at *3 (N.D. Ohio July 28, 2017) (quoting *Newberg on Class Actions* § 3:12 (5th ed. 2017)).
[17] Fed. R. Civ. P. 23(a)(2).
[18] *Dukes*, 564 U.S. at 350.

Case No. 18-CV-1050
Gwin, J.

common answers apt to drive the resolution of the litigation."[19] This requirement is relatively modest: there "need be only one common question to certify a class."[20]

Here, Plaintiff's claims raise numerous questions of law and fact common to the class, such as 1) whether Defendants issued unsolicited and activated debit cards to Plaintiff and class members; 2) whether this issuance violates EFTA; and 3) whether Defendants' retention of the card fees violates Ohio law. The Court finds that these issues satisfy the commonality requirement.

### (iii) Typicality

Rule 23(a)(3)[21] requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." A claim is typical where the named plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."[22]

Plaintiff satisfies the standard. Here, Plaintiff Humphrey's claims arise from the same course of conduct—Defendants' practice of issuing allegedly unsolicited and activated debit cards at the inmate's release and charging unconsented card fees. This course of conduct is the basis of a common legal theory: that the cards' issuance violated EFTA and the fees violated Ohio law.

Defendants argue that Plaintiff Humphrey is atypical because she is not a class

---

[19] *Id.* (quoting Richard Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97,132 (2009)) (ellipsis in original).
[20] *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013).
[21] Fed. R. Civ. P. 23(a)(3).
[22] *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (quoting 1 *Newberg on Class Actions* § 3–13, at 3–76).

member.[23] They contend that "in order to prevail on her EFTA claim, Plaintiff must demonstrate the existence of a written contract between herself and the Defendants." And since Humphrey alleges that Defendants never disclosed the fees or obtained her consent, the argument goes, she cannot represent a class alleging an EFTA violation.

Defendants' argument again conflates class membership with success on the merits. One does not establish class membership by showing that the class is entitled to relief. Indeed, if the EFTA class *were* defined in terms of Defendants' liability, the class would be an uncertifiable "failsafe" class.[24] The Plaintiff's proposed EFTA class is defined by objective criteria that may (or may not) give rise to liability: individuals who were incarcerated and were issued activated debit card to access funds that had been in their inmate trust account. By those criteria, she is a class member.

### (iv) Adequacy

Rule 23(a)(4)[25] requires that "the representative parties will fairly and adequately protect the interests of the class." There are two representational adequacy criteria: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel."[26]

---

[23] Typicality includes an implied requirement that the class representative belong to the class they represent. *See Rega v. Nationwide Mut. Ins. Co.*, No. 1:11-CV-1822, 2012 WL 5207559, at *4 (N.D. Ohio Oct. 22, 2012) (denying class certification where class included "individuals who . . . made payments on their policies which were received prior to the due date," and evidence showed that named plaintiff's payment was received after the due date).

[24] A "failsafe" class is a class that defines class membership in terms of liability. Such classes are uncertifiable because an adverse merits ruling would not bind absent class members. *See Young*, 693 F.3d at 538 ("[A] 'fail-safe' class is one that includes only those who are entitled to relief. Such a class is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those 'class members win or, by virtue of losing, they are not in the class' and are not bound." (quoting *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir.2011)).

[25] Fed. R. Civ. P. 23(a)(4).

[26] *Young*, 693 F.3d at 543.

Case No. 18-CV-1050
Gwin, J.

The Court finds that Humphrey's interests are aligned with the class. She alleges the same injury as class members—paying unwanted fees on unsolicited debit cards—and seeks the same relief that class members would likely pursue. Plaintiff does not have any interests that would present a conflict with the class.[27]

The Court is also satisfied that class counsel are "qualified, experienced and generally able to conduct the litigation."[28] Plaintiff's counsel submits a declaration[29] detailing extensive experience in consumer financial class action litigation.[30]

Defendants argue that Plaintiff Humphrey is inadequate due to her "extensive criminal background."[31] While this argument might have some purchase in other circumstances, this is a baffling line of attack given that the proposed class is, by definition, made up of former inmates.

Defendants' contention that Humphrey is unsuitable because of her "pre-existing knowledge of the Prepaid Card and the fees associated therewith"[32] is similarly misplaced. It is not uncommon for class action plaintiffs to be "testers," individuals who deliberately expose themselves to wrongful conduct for the sake of bringing suit.[33]

---

[27] *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 563 (6th Cir. 2007) (finding class representatives adequate because there was "no indication of a conflict of interest between the named plaintiffs and the class members"). Defendants confusingly suggest that Plaintiff Humphrey has interests adverse to the class because she is not seeking to recover money. They base this argument on deposition testimony agreeing with the statement that "this case isn't about recovering money. It's about stopping fees being charged on the debit card." *See* Doc. 42-1 at 166:18-20. Of course, Defendants are aware that Humphrey is, in fact, seeking monetary damages on behalf of herself and the class. *See* Doc. 22 at 12. And there is nothing contradictory, let alone disqualifying, about seeking monetary damages with the *goal* of deterring wrongful conduct. Given the low dollar fees at issue here, it would be more puzzling if Plaintiff Humphrey's ultimate goal was to recoup less than ten dollars.
[28] *Young*, 693 F.3d at 543 (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir.2000)).
[29] See Doc. 32-1 at 4-5.
[30] *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 563 (6th Cir. 2007) (finding class counsel adequate due to their participation in numerous class action cases).
[31] Doc. 42 at 14.
[32] *Id.*
[33] *See, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 368 (1982) (holding that "tester plaintiffs" employed by fair housing organization to make rental inquiries had standing to bring class action challenging discriminatory housing practices).

### (v) Ascertainability

In addition to these criteria, the Sixth Circuit has implied a Rule 23 ascertainability requirement. Under this requirement, "the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class."[34]

The Court finds that the class is objectively defined and that class member identification is administratively feasible. Class membership based on the proposed definition involves a determination of objective facts: whether the individual was incarcerated; whether at release they were issued an already activated debit card to access a bank account with their remaining inmate trust account funds; whether the cards were activated when they were distributed to inmates and whether they were charged any fees. Further, it should be straightforward to determine class membership on the basis of electronic records held by the Defendants.[35]

### C. The Proposed Classes Meet Rule 23(b)(3)'s Requirements

Plaintiffs seek certification under Rule 23(b)(3). Under Rule 23(b)(3), a court may certify a class if it meets the requirements of Rule 23(a) and the court also "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[36]

---

[34] *Young,* 693 F.3d at 537–38 (quoting 5 James W. Moore et al, *Moore's Federal Practice* § 23.21[1] (3d ed. 1997)).
[35] *Id.* at 540 (finding that class was ascertainable where the class members could be identified through review of defendants' records).
[36] Fed. R. Civ. P. 23(b)(3).

Case No. 18-CV-1050
Gwin, J.

### (i) Predominance

The predominance inquiry considers whether the proposed classes are "sufficiently cohesive to warrant adjudication by representation"[37] This requirement is satisfied where "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."[38]

The Court finds that the case common factual and legal issues predominate over the individual issues.

The Plaintiff's main allegations apply to all class members: that Defendants issued unsolicited activated debit cards and assessed fees on those cards. The resolution of the essential legal questions arising from these allegations—whether the cards are governed by EFTA, whether their unsolicited issuance violates EFTA, and whether Defendants' retention of fees violates Ohio law—will also affect all class members in the same fashion. Class wide damages resolution is also possible, because Defendants' records contain information detailing the fees charged to each class member.[39]

Defendants point out that Plaintiff's allegations include some issues requiring individual scrutiny. For one, Plaintiff Humphrey alleges that she did not receive the cardholder agreement when she was given her debit card. In their opposition to class certification, Defendants produce training materials and email exchanges instructing correctional facilities that they should provide a cardholder agreement to detainees upon issuance. This evidence suggests that determining whether class members actually

---

[37] *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).
[38] *Id.*
[39] *Beattie*, 511 F.3d at 564 (holding that "[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." (alteration in original)).

-11-

received the cardholder agreement calls for an individualized inquiry. Further, Defendants also suggest that individual class members may differ in terms of their awareness of card fees.

The Court finds that these individualized factual issues do not outweigh the common issues in the case, for two reasons. First, the cardholder agreement delivery may not, as a factual matter, determine whether class members entered into a contract with Defendants. If, as Defendants argue, card use constitutes an assent to its terms and conditions, then the contract formation issue may be resolved on a classwide basis regardless of individual differences regarding the inmates' receipt of the cardholder agreement.

Second, as a legal matter, individual differences in contract formation are not necessarily dispositive of Plaintiff's EFTA and Ohio-law claims. The existence of a contract, if proven, could defeat Plaintiff's unjust enrichment claims.[40] However, the resolution of the other claims in this action would not necessarily turn on the presence or absence of a contract between class members and Defendants. For these reasons, the Court gives less weight to the individualized issues regarding cardholder agreement receipt relative to the common issues described above.

Defendants argue that the unjust enrichment and conversion classes cannot satisfy the predominance requirement, because a determination whether the complained-of transaction was inequitable requires an individualized inquiry. Defendants cite to several

---

[40] See *McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 469, 487 (6th Cir. 2014) (explaining that under Ohio law, "a plaintiff cannot recover for unjust enrichment when an express contract governs the subject matter of the litigation").

Case No. 18-CV-1050
Gwin, J.

district court decisions from this district that have declined certification on these grounds.[41]

The Court disagrees. First of all, predominance does not require that every claim element be fit for class resolution.[42] It only requires that the common issues predominate over individual ones. Central elements of Plaintiff's unjust enrichment claim are subject to class wide proof.[43] Secondly, the circumstances making Defendants' retention of bank card fees unjust are essentially uniform across the class. The factual bases of the Ohio-law claims—that Plaintiff's funds were involuntarily converted into a medium carrying high transaction costs—do not differ across class members, and a legal determination whether Defendants' policies are unjust will also apply with equal force to each class member.[44]

Defendants also argue that the conversion and unjust enrichment classes cannot be certified because Plaintiff and other class members are "prime candidate[s] for any number of equitable and other defenses, including unclean hands."[45] However, "the mere mention of a defense is not enough to defeat" the predominance requirement.[46] The Sixth Circuit has repeatedly recognized that "the fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones."[47] Defendants' insistence that Plaintiff and class members are subject

---

[41] *See Carter v. PJS of Parma, Inc.*, No. 15 CV 1545, 2016 WL 3387597, at *6 (N.D. Ohio June 20, 2016); *Chesner v. Stewart Title Guar. Co.*, No. 1:06CV00476, 2008 WL 553773, at *14 (N.D. Ohio Jan. 23, 2008). *But see Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 570 (E.D. Mich. 2009) (certifying unjust enrichment class); *Slapikas v. First Am. Title Ins. Co.*, 250 F.R.D. 232, 248 (W.D. Pa. 2008) (certifying unjust enrichment class because alleged injustice stemmed from "standard procedures"), *class decertified on other grounds*, 298 F.R.D. 285 (W.D. Pa. 2014).

[42] *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017) ("Plaintiffs need not prove that every element [of a cause of action] can be established by classwide proof.").

[43] Under Ohio law, "[a] plaintiff must establish the following three elements to prove unjust enrichment: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Lucio v. Safe Auto Ins. Co.*, 2009-Ohio-4816, ¶ 23, 183 Ohio App. 3d 849, 858, 919 N.E.2d 260, 267.

[44] *See Hoving*, 256 F.R.D. at 570 ("[C]lass certification is appropriate, as the factual issue of any scheme employed by the defendant and the legal issues involving interpretation of the rate manuals and determination whether the defendant's custom or policy constitutes unjust enrichment predominate over individualized inquiries.").

[45] Doc. 42 at 11

[46] *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016).

[47] *Young*, 693 F.3d at 544.

to unspecified defenses are not sufficient to defeat class certification.

### (ii) Superiority

In making the superiority determination, the court considers: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."[48]

The Court finds that the superiority requirement is satisfied. The class action mechanism is generally superior where, as here, the "small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."[49] The Sixth Circuit has also held that cases like this one, which "allege[] a single course of wrongful conduct," are especially well-suited for class treatment.[50]

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff Humphrey's motion for class certification. The Court **APPOINTS** Plaintiff Humphrey as class representative and **APPOINTS** Matthew A. Dooley, Ryan M Gembala, and Stephen M. Bosak, Jr., as class counsel.

---

[48] Fed. R. Civ. P. 23(b)(3).
[49] *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (1997)). *See also Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 567 (6th Cir. 2007) (explaining that where a "small possible recovery would not encourage individuals to bring suit," a class action is the "superior mechanism for adjudicating this dispute").
[50] *Young*, 683 F.3d at 545 (quoting *Powers v. Hamilton County Pub. Defender Com'n*, 501 F.3d 592, 619 (6th Cir.2007)).

Case No. 18-CV-1050
Gwin, J.

The Court hereby certifies the following Rule 23(b)(3) classes:

| EFTA Class | Ohio Conversion Class | Ohio Unjust Enrichment Class |
| --- | --- | --- |
| All persons in the United States who were taken into custody at a jail, correctional facility, detainment center, or any other law enforcement facility, and upon release were issued a pre-activated debit card by Defendants to access a bank account containing any funds remaining in their inmate trust account within one year prior to the filing of the original Complaint in this action and during its pendency. | All persons in Ohio who were taken into custody at a jail, correctional facility, detainment center, or any other law enforcement facility, and upon release were issued a pre-activated debit card by Defendants containing any funds remaining in their inmate trust account and from which Defendants deducted any fees within four years prior to the filing of the original Complaint in this action and during its pendency. | All persons in Ohio who were taken into custody at a jail, correctional facility, detainment center, or any other law enforcement facility, and upon release were issued a pre-activated debit card by Defendants containing any funds remaining in their inmate trust account and from which Defendants deducted any fees within six years prior to the filing of the original Complaint in this action and during its pendency. |

IT IS SO ORDERED

Dated: November 16, 2018          *s/*     *James S. Gwin*

                                                                                     JAMES S. GWIN
                                                                                     UNITED STATES DISTRICT JUDGE