# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**AMBER HUMPHREY, on behalf of herself and all others similarly situated,**

      Plaintiff,

      vs.

**STORED VALUE CARDS, INC. d/b/a NUMI FINANCIAL, et al.,**

      Defendants.

CASE NO.  1:18-CV-01050

UNITED STATES JUDGE GWIN

---

## PLAINTIFF'S UNOPPOSED MOTION FOR
## FINAL APPROVAL OF CLASS SETTLEMENT, AWARD OF ATTORNEY FEES AND LITIGATION EXPENSES, AND SERVICE PAYMENT TO PLAINTIFF

Plaintiff Amber Humphrey moves the Court under Fed. R. Civ. P. 23 for an order granting final approval of the class action settlement, awarding a service payment to Humphrey, awarding Class Counsel's requested fees and costs, and approving the administration of the settlement. A memorandum in support is attached and incorporated herein.

      Respectfully submitted,

      O'TOOLE, McLAUGHLIN, DOOLEY
      & PECORA CO., LPA

      /s/ Matthew A. Dooley
      Matthew A. Dooley (0081482)
      Ryan M. Gembala (0079431)
      Stephen M. Bosak (0092443)
      5455 Detroit Road
      Sheffield Village, Ohio 44054
      Telephone:    (440) 930-4001
      Facsimile:    (440) 394-7208
      Email:    mdooley@omdplaw.com
              rgembala@omdplaw.com
              sbosak@omdplaw.com
      *Class Counsel*

i

# TABLE OF CONTENTS

I.   Overview ...................................................................................................................... 1

II.   The Settlement Notice Process should be approved by the Court........................................... 2

III.   The Settlement is fair, reasonable, and adequate, and the Court should grant final approval.
6

A.   The Settlement was negotiated at arm's length, and there is no risk of fraud or collusion.  8

B.   The Complexity, Expense, Duration, and Risks of Continued Litigation and the Likelihood

of Success on the Merits.......................................................................................................... 8

C.   Class Counsel and the Class Representative have adequately represented the Class and

recommend that the Settlement is approved. The absent Class Members do not object. ......... 10

D.   The proposed plan of distribution is reasonable, and all class members are treated the same.
11

E.   The public interest weighs in favor of settlement............................................................. 11

IV.   The Court should approve Plaintiff's requested service payment and Class Counsel's

requested fees and costs. ......................................................................................................... 12

A.   Plaintiff's requested payment for her service as class representative is reasonable. ......... 12

B.   The Court should award Class Counsel attorney's fees of $200,000, which is less than

provided for in the Settlement. The Court should also approve reimbursement of Class Counsel's

litigation expenses totaling $23,941.77.................................................................................... 13

C.   Class Counsel's requested reimbursement for litigation expenses should be approved.... 17

V.   CONCLUSION ................................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Bailey v. Great Lakes Canning, Inc.*,
   908 F.2d 38 (6th Cir. 1990) ................................................................................. 6

*Ball v. Kasich*,
   No. 2:16-cv-282, 2020 WL 1969289 (S.D. Ohio Apr. 24, 2020) ............................................. 12

*Carr v. Bob Evans Farms, Inc.*,
   No. 1:17-cv-7508650, 2018 WL 7508650 (N.D. Ohio July 27, 2018) .................. 13, 14, 15, 17

*Ceccone v. Equifax Info. Servs. LLC*,
   No. 13-cv-1314, 2016 WL 5107202 (D.D.C. Aug. 26, 2016) ................................................... 4

*Doe v. Ohio*,
   No. 2:91-cv-464, 2020 WL 728276 (S.D. Ohio Feb. 12, 2020) ...................................... 7, 8, 10

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ................................................................................................................ 5

*Franks v. Kroger Co.*,
   649 F.2d 1216 (6th Cir. 1981) .............................................................................................. 3, 6

*Granada Invs., Inc. v. DWG Corp.*,
   962 F.2d 1203 (6th Cir. 1992) ............................................................................................ 6, 12

*Hadix v. Johnson*,
   322 F.3d 895 (6th Cir. 2003) ................................................................................................. 12

*Hainey v. Parrot*,
   617 F. Supp. 2d  (S.D. Ohio 2007) .......................................................................................... 8

*In re Automotive Parts Antitrust Litig.*, No. 12-MDL-02311,
   2016 WL 8200511 (E.D. Mich. Aug. 9, 2016) ......................................................................... 5

*In re Automotive Parts Antitrust Litig.*, No. 12-MDL-02311,
   2020 WL 5653257 (E.D. Mich. Sept. 23, 2020) ................................................................ 12, 13

*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003) ................................................................................ 9, 10, 12

*In re Packaged Ice Antitrust Litig.*,
   No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ..................................... 10

*In re Packaged Ice Antitrust Litig.*,
   No. 17-2137, 2018 WL 4520931 (6th Cir. May 24, 2018) ........................................................ 7

*In re Polyurethane Foam Antitrust Litig.*,
    178 F. Supp. 3d 621 (N.D. Ohio 2016) ................................................................. 11

*In re Serzone*,
    231 F.R.D. 221 (S.D. W. Va. 2005) ................................................................ 4, 11

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liability Litig.*,
    268 F. Supp. 2d 907 (N.D. Ohio 2003) ................................................................. 15

*In re Telectronics Pacing Sys.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001) ................................................................... 8

*In re U.S. Bancorp. Litig.*,
    291 F.3d 1035 (8th Cir. 2002) ............................................................................ 16

*In re Zurn Pex Plumbing Prod. Liab. Litig.*, No. 08-MDL-1958,
    2013 WL 716008) (D. Minn. Feb. 27, 2013) .......................................................... 5

*Int'l Union UAW v. Gen Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ................................................................................. 7

*Johnson v. Midwest Logistics Sys., Ltd.*,
    No. 2:11-cv-1061, 2013 WL 2295880 (S.D. Ohio May 24, 2013) .......................... 13

*Levell v. Monsanto Research Corp.*,
    191 F.R.D. 543 (S.D. Ohio 2000) .......................................................................... 6

*Lonardo v. Travelers Indem. Co.*,
    706 F. Supp. 2d 766 (N.D. Ohio 2010) ................................................................... 6

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) ................................................................................. 6

*Owner-Operator Independent Drivers Assn., Inc. v. Arctic Express, Inc.*,
    No. 97-cv-750, 2016 WL 5122565 ................................................................ 13, 15

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) .......................................................................................... 3, 4

*Physicians of Winter Haven LLC v. Steris Corp.*,
    No. 1:10-cv-264, 2012 WL 406966 (N.D. Ohio Feb. 6, 2012) ................................ 13

*Pollard v. Remington Arms Co., LLC*,
    320 F.R.D. 198 (W.D. Mo. 2017) ......................................................................... 10

*Ramey v. Cincinnati Enquirer, Inc.*,
    508 F.2d 1188 (6th Cir. 1974) .............................................................................. 14

*Reed v. Rhodes*,

v

179 F.3d 453 (6th Cir. 2008) ................................................................................ 14

*Salinas v. U.S. Xpress Enter., Inc.*,
   No. 1:13-cv-245, 2018 WL 1477127 ................................................... 13, 14, 16

*Sheick v. Automotive Component Carrier LLC*,
   No. 2:09-cv-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) ....................... 9

*Smith v. LexisNexis Screening Solutions, Inc.*,
   No. , 2015 WL 9459724 (E.D. Mich. Dec. 28, 2015) ............................................ 17

*Townsend v. AIM Logistics, Inc.*,
   No. 4:15-cv-493, 2016 WL 8193582 (N.D. Ohio May 12, 2016) ........................... 13

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.*,
   No. 1:08-CV-605, 2010 WL 1751995 (N.D. Ohio Apr. 30, 2010)........................... 16

*Williams v. Vukovich*,
   720 F.2d 909 (6th Cir. 1983) ................................................................................ 10

**Statutes**

15 U.S.C. § 1691i ................................................................................................... 15

15 U.S.C. § 1693m .................................................................................................. 14

15 U.S.C. § 1693m(3) .............................................................................................. 17

15 U.S.C. § 1693m(a)(2) ........................................................................................... 9

**Rules**

Fed. R. Civ. P. 23 ................................................................................................. i, 5

Fed. R. Civ. P. 23(e)(2) ...................................................................................... 7, 11

Rule 23(b)(3) ....................................................................................................... 2, 5

Rule 23(c)(2) .......................................................................................................... 3

Rule 23(c)(2) and 23(e) ............................................................................................ 2

Rule 23(c)(2)(B) ...................................................................................................... 5

Rule 23(e) ..................................................................................................... 2, 3, 6, 7

Rule 23(e)(3) ........................................................................................................... 7

**Other Authorities**

Herbert Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002)........................................... 6

## MEMORANDUM IN SUPPORT[1]

### I.    Overview

Plaintiff seeks final approval for this EFTA class action settlement, which the Court preliminarily approved on May 27, 2020. (Doc. 112). The settlement is made on behalf of individuals that were issued pre-activated, prepaid debit cards upon their release from correctional facilities across the country. Defendants agreed to establish a $550,000 fund to pay (1) Class Members who filed claims in accordance with the terms of the settlement, (2) the cost of notice and administration, (3) attorney fees and litigation expenses, and (4) a service payment to Plaintiff. Importantly, the cash payments to Class Members are intended to cover reimbursement for fees and charges incurred because of Defendants' prepaid debit card program, which Plaintiff alleges were unlawful.

From the beginning, this case was vigorously litigated by all parties. Defendants have consistently denied liability and forcefully defended against Plaintiff's claims. Indeed, this class action asserts novel claims under EFTA that have resulted in a pending interlocutory appeal before the Sixth Circuit. *See Humphrey v. Stored Value Cards, et al.*, Case No. 19-3467 (6th Cir.). Despite Plaintiff's success on her contested motions for class certification and partial summary judgment, there remains substantial risk that her claims may fail in the Circuit Court, and the class will receive no relief. With this considerable risk in mind, the Parties negotiated this hard-fought settlement with the assistance of Magistrate Judge David Ruiz.

Although the initial settlement conference proved unsuccessful, the Parties continued negotiations with Magistrate Judge Ruiz's assistance and reached an initial settlement agreement

---

[1] All defined terms shall have the same meaning used in the Amended Stipulation of Settlement (Doc. 111-1).

memorialized by the Parties first Stipulation of Settlement. (Doc. 97-1). After discovering that the class size greatly exceeded the Parties' initial agreement, ongoing negotiations accomplished an Amended Stipulation of Settlement that narrowed the class period and resulted in a final class size of 153,688 individuals. (*See attached* Declaration of Jeffrey Pirrung, Settlement Administrator, at ¶ 3) ("Pirrung Decl.").

> The Parties agree to settle the following Settlement Class:
>
> All persons in the United States who were taken into custody at a jail, correctional facility, detainment center, or any other law enforcement facility, and upon release were issued a pre-activated debit card by Defendants to access a bank account containing any funds remaining in their inmate trust account between April 1, 2017 and April 30, 2018.

(Doc. 111-1, at ¶ 2.1). To date, 1,771 timely claims and an additional 5 untimely claims have been submitted to the Settlement Administrator, which will result in a cash payment of approximately $49.00 per class member. (Pirrung Decl., at ¶ 15). This per-claim recovery greatly exceeds the typical fees incurred by individual class members receiving Defendants' release cards.[2]

Following the Court's preliminary approval order, the Settlement Administrator, American Legal Claims Services LLC (ALCS), engaged in a robust notice process designed to provide the best practicable notice to the Class Members. (*See generally id.*). It reached over 85% of the Class Members via regular or electronic mail and had only two opt-outs and one objection, which was unrelated to the settlement. (*Id.*, at ¶¶ 14-20).

## II.    The Settlement Notice Process should be approved by the Court.

In class actions certified under Rule 23(b)(3),[3] notice must meet the requirements of Rule 23(c)(2) and 23(e). Rule 23(e) specifies that no class action may be dismissed or compromised

---

[2] For example, Plaintiff incurred fees totaling $5.95, which was typical of other Class Members.

[3] Unless otherwise noted, all references to "Rule" mean the Federal Rules of Civil Procedure.

without court approval, preceded by notice to the class members. Rule 23(c)(2) requires that notice to the class must be "the best practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2). The Rule also requires that the notice inform potential class members that: (1) they have an opportunity to opt out; (2) the judgment will bind all class members who do not opt out; (3) and any member who does not opt out may appear through counsel. *Id.* The Court must consider the mode of dissemination and the content of the notice to assess whether such notice was sufficient. *See* Federal Judicial Center, *Manual for Complex Litig.* § 21.312 (4th 2004). Rule 23(e) gives the Court "virtually complete" discretion as to the manner of service of settlement notice. *E.g.*, *Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir. 1981); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-13 (1985) (direct notice satisfies due process).

To accomplish class notice, Defendants provided Class Counsel and ALCS with a spreadsheet containing 174,875 rows of data including card numbers, names, addresses, phone numbers, and last four digits of SSNs belonging to Class Members (the "Class List"). (*Id.*, at ¶ 3). Several records within the spreadsheet were missing complete information, so ALCS partnered with an industry leader in data fusion to compare names and addresses from the Class List to locate the most current address and identifying information for the Class Members. (*Id.*). This process included updating addresses for the Class List and removing duplicates in the file. (*Id.*). ALCS also used several additional methods, including USPS's National Change of Address database and skip-tracing, to ensure the most accurate mailing addresses for the Class Members. (*Id.*). The final Class List included 153,688 individuals. (*Id.*). Of these, the Settlement Administrator was ***unable*** to locate a valid mailing or email address for 12,159 individuals. (*Id.*).

3

For those class members who had a valid address, the Settlement Administrator provided the approved Class Notice (Doc. 111-2) via regular mail or electronic mail. (*Id.*, at ¶¶ 7-10). Any Class Notice that was returned with a forwarding address was remailed to the appropriate address. If no forwarding information was provided, the Settlement Administrator used commercially reasonable means to locate current address information and attempted a second mailing. (*Id.*). The Settlement Administrator attempted regular mail notification to 141,436 Class Members and successfully reached 126,803 Class Members (82.51%). (*Id.*, at ¶ 14). The Settlement Administrator also attempted email notification to 72,438 Class Members and successfully reached 62,556 Class Members. In total, the Settlement Administrator provided direct notice via either regular mail or electronic mail to 131,762 Class Members (**85.73%**). (*Id.*).

In addition to the direct mailing plan, the Parties also devised an internet and social media campaign that included the establishment of a settlement website (www.numicardssettlement.com) and targeted Facebook ads using the available Class Member data. (*Id.*, at ¶ 13). These targeted ads reached 141,003 associated combinations of identifying data, which the Settlement Administrator estimates to be approximately 57% of the targeted audience. (*Id.*). This effort generated 857 direct ad clicks and 2,173 overall settlement website visits. (*Id.*). Because the Class Notice plan reached over 85% of the Class Members, it should be approved by the Court.

Courts routinely approve direct notice plans that reach at least 80% of the Class. *In re Serzone*, 231 F.R.D. 221, 236 (S.D. W. Va. 2005) (approving notice program where direct mail portion reached 80% of class members); *see also Ceccone v. Equifax Info. Servs. LLC*, No. 13-cv-1314, 2016 WL 5107202, at *8 (D.D.C. Aug. 26, 2016) (approving direct notice plan with

87% delivery rate) (citing *In re Zurn Pex Plumbing Prod. Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716008) (D. Minn. Feb. 27, 2013) (approving notice plan that reached 80.6% of class). As a backstop, the Settlement Administrator also established a website, which allowed class members to submit claims and view the relevant settlement documents. (Pirrung Decl., at ¶ 12). The Settlement Administrator also engaged in a targeted social media campaign aimed at reaching additional Class Members that may have been missed by the direct mailing program. (*Id.*, at ¶ 13) The Parties' multi-faceted plan, which combined direct mailing and an advertising campaign, provided the best notice practicable under the circumstances. *See In re Automotive Parts Antitrust Litig.*, No. 12-MDL-02311, 2016 WL 8200511, at *3 (E.D. Mich. Aug. 9, 2016) (approving notice plan that included direct notice via regular and electronic mail and a social media campaign).

The Class Notice also provided the Class Members with a clear and concise statement of their rights under Rule 23(c)(2)(B). (*See* Doc. 111-2). The Class Notice directed Class Members to the settlement website or a toll-free number for additional information regarding how they could opt out of or object to the settlement. (*Id.*); *see In re Automotive*, 2016 WL 8200511, at *9 ("The purpose of notice in a class action is to 'afford members of the class due process, which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment.'") (*quoting Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974)). Thus, the Class Notice process meets the strictures of Rule 23 and due process, and it should be approved by the Court. Plaintiff also requests that the Court approve payment to the Settlement Administrator to be paid from the Settlement Funds in accordance with the Amended Stipulation of Settlement.[4]

---

[4] The Settlement Administrator estimates its final costs at $223,598.01. (Pirrung Decl., at ¶ 15).

III.    **The Settlement is fair, reasonable, and adequate, and the Court should grant final approval.**

It is well settled that the law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of prolonged litigation. *Franks*, 649 F.2d at 1224; *see also* Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("By their very nature, because of the uncertainty of outcome, difficulties of proof, length of litigation, class action suits lend themselves readily to compromise.") Recognizing that complex litigation can be "notoriously difficult and unpredictable," in the absence of "fraud or collusion," settlements in complex litigation are not to be disturbed. *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) (quoting *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983)).

Class settlement approval is a three-step process. *E.g.*, *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 547 (S.D. Ohio 2000) (citing cases). First, the Court must preliminarily approve the proposed settlement. Second, the class members must be given notice of the proposed settlement. And third, the Court must determine whether the proposed settlement is "fair, adequate, and reasonable" to the class. *Id.* The Court has preliminarily approved the Settlement and the Class Members have received notice. The determination of whether to grant final approval for the Settlement is left to the sound discretion of the Court. *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 778 (N.D. Ohio 2010) (citing *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990)).

In evaluating whether a class action settlement is fair, reasonable, and adequate under Rule 23(e), courts in the Sixth Circuit consider the following factors:

(1) The risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class

6

representatives; (6) the reaction of absent class members; and (7) the public interest. *In re Packaged Ice Antitrust Litig.*, No. 17-2137, 2018 WL 4520931, at *6 (6th Cir. May 24, 2018) (quoting *Int'l Union UAW v. Gen Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). The most important factor "is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Id.* (quotations omitted).

The 2018 amendments to Rule 23(e) also contain specific factors for federal courts to consider in determining whether a class action settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). These factors include:

> A. whether the class representatives and class counsel have adequately represented the class;
>
> B. whether the proposal was negotiated at arm's length;
>
> C. whether he relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class including the method of processing class member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> D. whether the proposal treats class members equitably.

*Id.* These amendments are not intended to "displace" the factors developed by the Sixth Circuit, "but rather focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* at *Advisory Committee's Note to 2018 amendment*. Thus, courts in this Circuit consider both sets of factors when assessing the reasonableness of a settlement. *Doe v. Ohio*, No. 2:91-cv-464, 2020 WL 728276, at *3 (S.D. Ohio Feb. 12, 2020). Regardless, the Court enjoys "wide discretion in assessing the weight and applicability of these factors." *Id.* (quotations omitted).

**A. The Settlement was negotiated at arm's length, and there is no risk of fraud or collusion.**

Here, the Parties did not reach the settlement without protracted negotiations and contentious litigation. Prior to the settlement, the Parties exchanged tens of thousands of documents during discovery, took several depositions, and completed extensive motion practice that resulted in Plaintiff's successful certification of the class and the grant of partial summary judgment on her EFTA claims.[5] The latter ruling is currently pending before the Sixth Circuit, which has certified for interlocutory appeal the question of whether Defendants' bank account holding pooled inmate card funds is an "account" as defined under the EFTA. (Doc. 88).

Against this backdrop, the Parties were able to reach an agreement only with the assistance of Magistrate Judge Ruiz serving as mediator. *Hainey v. Parrot*, 617 F. Supp. 2d 688, 673 (S.D. Ohio 2007) ("The participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties.") Thus, there is no risk of fraud or collusion, and these factors weigh in favor of final approval. *See Doe*, 2020 WL 728276, at *4 ("The Parties' litigation history, including extensive discovery, indicates that the Settlement Agreement reflects a good faith compromise, not an act of collusion or fraud.")

**B. The Complexity, Expense, Duration, and Risks of Continued Litigation and the Likelihood of Success on the Merits.**

"[S]ettlements avoid the costs, delays, and multitude of other problems" inherent in complex class action litigation. *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). Here, despite the extensive discovery and motion practice already completed, there are still several obstacles before this case can be litigated to completion. Indeed, Plaintiff's

---

[5] For this reason, the third *UAW* factor weighs in favor of final approval.

likelihood of success on the merits is uncertain given the novel EFTA theories presented in her lawsuit. And the Sixth Circuit's decision to grant interlocutory appeal presents substantial risks for both Plaintiff and Defendants. (Doc. 88). If the Sixth Circuit rules in Defendants' favor, Plaintiff's EFTA claims fail, and the class members will receive no relief.

If Plaintiff survives the interlocutory appeal, Plaintiff must still prevail at trial, which could be months or years away. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003) (noting that "the prospect of trial necessarily involves the risk that Plaintiffs would obtain little or no recovery.") The EFTA also limits class recovery to ***the lesser of*** one-percent of the defendants' net worth, or $500,000, plus an award attorney's fees and costs. 15 U.S.C. § 1693m(a)(2). Thus, the Parties' settlement, which establishes a $550,000 common fund, provides instant and tangible relief to the Class, and eliminates the risk of continued litigation and the potential that Class Members receive no relief at all. *Sheick v. Automotive Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *18 (E.D. Mich. Oct. 18, 2010) ("Absent settlement, all Class Members would be subject to the uncertainty, risk, hardship, and delay attendant to continued litigation, which ultimately might leave them with absolutely nothing.") Those Class Members that file claims will receive almost $50, which is significant relief based on the likelihood that the actual fees incurred by these individuals was much less than their anticipated recovery.[6] Moreover, given the considerable expense and duration of continued litigation, and the risk that Plaintiff will not be successful on the merits, these factors weigh heavily in favor of final approval.

---

[6] For example, the total fees charged to Plaintiff's prepaid debit card were $5.95.

**C. Class Counsel and the Class Representative have adequately represented the Class and recommend that the Settlement is approved. The absent Class Members do not object.**

Plaintiff and Class Counsel have protected the interests of the Class throughout the litigation and have negotiated a fair and reasonable settlement on their behalf. As established earlier, Class Counsel achieved contested class certification and partial summary judgment prior to settlement. The Sixth Circuit recognizes that "the court should defer to the judgment of experienced counsel who have competently evaluated the strengths of [their] proofs." *Doe*, 2020 WL 728276, at *6 (quoting *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)). Here, Class Counsel have extensive experience in class action litigation and are well qualified to conclude that this settlement is fair and reasonable given the substantial risks of continued litigation. (*See* Doc. 32-1, Decl. of Matthew A. Dooley).

The absent Class Members also have not voiced any opposition to the proposed settlement. Only two Class Members have opted out of the settlement, and only one Class Member has objected. (Pirrung Decl., at ¶¶ 18-19). The sole objection, however, does not speak to any fairness factors or contest the settlement, and therefore, does not warrant rejecting the settlement. (*See* Objection of Joseph Lisciandro, attached); *see also In re Cardizem*, 218 F.R.D. at 527 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") Likewise, although the claims rate here of less than 2% is lower than Plaintiff would have hoped, it does not evidence that the settlement is not fair, adequate, and reasonable. *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *14 (E.D. Mich. Dec. 13, 2011) ("Although the number of responses filed represents just under 1% of the total number of Notices mailed, this ratio is not dispositive and is frequently less than 5%.")[7]; *see also Pollard*

---

[7] The current pandemic, which has severely disrupted the lives of millions of Americans, also likely played a role in the lower claims rate.

*v. Remington Arms Co., LLC*, 320 F.R.D. 198, 215 (W.D. Mo. 2017) (recognizing that "the claims rate does not govern whether settlement is fair, reasonable, or adequate" and citing cases granting final approval for claims rates below 1%). Here, despite the opportunity to object, only one Class Member did. *In re Serzone*, 231 F.R.D. at 236 ("the adequacy of the notice is measured by whether notice reached Class Members and gave them an opportunity to participate, not by actual participation.") Conversely, almost 1,800 individuals will see real monetary relief because of the settlement. These factors, therefore, weigh in favor of approving the class settlement.

### D. The proposed plan of distribution is reasonable, and all class members are treated the same.

The final Rule 23(e)(2) factors look to whether class members are treated equitably relative to each other in the distribution of any settlement funds. Here, the Parties negotiated a pro rata distribution to those Class Members that submit valid claims. Any remaining funds will be distributed to a *cy pres* beneficiary. The Parties submit Towards Employment, Inc. to the Court for approval as the *cy pres* beneficiary of any uncashed Settlement Funds. *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 621, 623 (N.D. Ohio 2016) (recognizing that the "final choice" of a *cy pres* recipient remains within the Court's discretion). Towards Employment, Inc. is an Ohio-based nonprofit that has specific programming aimed at assisting the formerly incarcerated with finding gainful employment. *See* https://www.towardsemployment.org/ (last visited October 12, 2020). This includes removing barriers to employment like assisting the formerly incarcerated with debt or credit issues. (*Id.*) Thus, where the Class Members are treated equally, these factors weigh in favor of final approval.

### E. The public interest weighs in favor of settlement.

Lastly, the Court must consider the public interest in approving the settlement. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits

because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem*, 218 F.R.D. at 530, *quoting Granada*, 962 F.2d at 1205. "The public has a similar interest 'in ending long and protracted litigation.'" *Ball v. Kasich*, No. 2:16-cv-282, 2020 WL 1969289, at *9 (S.D. Ohio Apr. 24, 2020) (citations omitted). Approval of the settlement here brings closure to a multi-year class action lawsuit, conserves the time and resources of the Court, and provides meaningful relief to almost 1,800 Class Members. The public interest is served by granting final approval.

### IV. The Court should approve Plaintiff's requested service payment and Class Counsel's requested fees and costs.

#### A. Plaintiff's requested payment for her service as class representative is reasonable.

Service payments (or incentive awards) are typically given to the class representative for their extensive involvement in the class action and are left to the sound discretion of the district court. *E.g.*, *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). The Parties agreed that Ms. Humphrey could seek a service payment of $15,000 from the common fund for her service as the sole class representative. (Doc. 111-1, at ¶ 8.4). This award reflects Ms. Humphrey's extensive participation and diligent work in assisting Class Counsel's prosecution of this class action. *In re Automotive Parts Antitrust Litig.*, No. 12-MDL-02311, 2020 WL 5653257, at *5 (E.D. Mich. Sept. 23, 2020) ("Awards encourage class members to become class representatives and reward their efforts taken on behalf of the class. Payment of incentive awards to class representatives is a reasonable use of settlement funds.")

Ms. Humphrey was the "tip of the spear" in this litigation, which included participating in the preparation of the pleadings and discovery, preparing for and sitting for a day-long deposition, and attending the case management and mediation conferences. (*See* Declaration of Matthew A. Dooley, at ¶¶ 19-20, *attached*) ("Dooley Decl."). Ms. Humphrey also maintained constant

communication with Class Counsel regarding the status of the case and was always available in service of the class. (*Id.*). Accordingly, the Court should award Ms. Humphrey $15,000 as a service payment for her role as the class representative, which is typical of awards within this Circuit and District. *See Owner-Operator Independent Drivers Assn., Inc. v. Arctic Express, Inc.*, No. 97-cv-750, 2016 WL 5122565, at *7 (awarding two class representatives $25,000 each); *Physicians of Winter Haven LLC v. Steris Corp.*, No. 1:10-cv-264, 2012 WL 406966, at *9 (N.D. Ohio Feb. 6, 2012) (awarding $15,000 incentive award); *Townsend v. AIM Logistics, Inc.*, No. 4:15-cv-493, 2016 WL 8193582, at *2 (N.D. Ohio May 12, 2016) (awarding $15,000 incentive payment).

**B.**  **The Court should award Class Counsel attorney's fees of $200,000, which is less than provided for in the Settlement. The Court should also approve reimbursement of Class Counsel's litigation expenses totaling $23,941.77.**

The Stipulation of Settlement provides that Class Counsel may request up to $250,000 for attorney's fees and costs. (Doc. 111-1, at ¶ 8.2). Class Members were notified that Class Counsel would request this amount, and none voiced an objection to the requested fee. (*See supra*). Here, Class Counsel request an award of attorney's fees of $200,000, which is less than permitted under the Amended Stipulation of Settlement and equates to just over 36% of the total Settlement Funds. This percentage is consistent with other awards within this district and Circuit. *Salinas v. U.S. Xpress Enter., Inc.*, No. 1:13-cv-245, 2018 WL 1477127, at *7-8 (awarding 40% of common fund plus costs and expenses); *Owner-Operator*, 2016 WL 5122565, at *7 (awarding attorney's fees of 1/3 of settlement fund plus costs and expenses); *Townsend*, 2016 WL 8193582, at *3 (awarding attorney's fees and costs of 1/3 of the settlement fund); *Carr v. Bob Evans Farms, Inc.*, No. 1:17-cv-7508650, 2018 WL 7508650, at *5 (N.D. Ohio July 27, 2018) (Gwin, J.) (awarding attorney's fees of 1/3 of settlement fund plus costs and expenses); *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-cv-1061, 2013 WL 2295880, at *2 (S.D. Ohio May 24, 2013) (awarding attorney's fees

13

and costs of 33% of settlement fund).

An attorney's fee award must be reasonable. *Carr*, 2018 WL 7508650, at *3 (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008). The Court has discretion to select either percentage-of-the-fund or the lodestar multiplier method, with the percentage-of-the-fund method being preferred for common fund cases. *Id.* at *4. Under the percentage-of-the-fund method, the Court considers the *Ramey* factors: (1) the value of the benefit to the collection action; (2) society's interest in rewarding attorneys who achieve such benefits; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the skill of the litigators on both sides. *Id.* (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). Here, Class Counsel seek $200,000 or 36.4% of the Settlement Funds, which is only 57% of its lodestar. (*See* Dooley Decl., at ¶ 16); *see also Salinas*, 2018 WL 1477127, at *8 (awarding 40% of common fund and acknowledging plaintiff's counsel significant concession in fees from counsel's lodestar). Class Counsel's requested fee is supported by the *Ramey* factors.

Here, the Settlement created a $550,000 common fund for the benefit of the Class Members, which must be viewed against the backdrop of the statutory limitations on Plaintiff's EFTA class action recovery. *See* 15 U.S.C. § 1693m. Under the Settlement, Class Members who filed claims will receive over $49, which greatly exceeds the typical fees incurred by Class Members as a result of Defendants' card program. (*See* fn. 2, *supra*).[8] The Class's recovery should also be viewed considering the substantial risks that Plaintiff would have been unsuccessful in the litigation, and the Class would receive no relief at all. Plaintiff's class action asserted novel theories

---

[8] As previously noted, the claims rate is slightly disappointing given the available benefits for the Class Members. Had the claims rate exceeded 5%, Class claimants would still have recovered over $11.00 per person, which is still greater than the average fee charged by Defendants.

14

under the EFTA positing that Defendants' card program constituted unauthorized, pre-activated debit cards in violation of 15 U.S.C. § 1691i. If this theory is unsuccessful before the Sixth Circuit on interlocutory appeal, Plaintiff's class claims will fail, and Class Members will receive nothing. Thus, Class Counsel's ability to achieve contested class certification and negotiate the Settlement here weighs in favor of their requested award of attorney's fees.

Society also "has a clear interest in encouraging counsel to litigate cases 'enabling claimants to pool their claims and resources to achieve a result they could not obtain alone.'" *Owner-Operator*, 2016 WL 5122565, at *7 (quoting *In re Sulzer Hip Prosthesis & Knee Prosthesis Liability Litig.*, 268 F. Supp. 2d 907, 936 (N.D. Ohio 2003)). Class Counsel undertook this litigation on a contingent fee basis, expending thousands of hours and tens of thousands of dollars in hard costs with no guarantee of success. *See Carr*, 2018 WL 7508650, at *4.

Class Counsel's skill and value provided, and the complexity of the litigation, also weigh strongly in favor of the requested fee award. Both Class Counsel and Defendants' Counsel are skilled litigators and expertly advocated on behalf of their clients. This hard-fought litigation involves extensive discovery, motion practice, and initial preparation for trial. There can be no dispute that this litigation involved complex and novel legal issues that militate in favor of Class Counsel's requested fee. In total, Class Counsel's lodestar exceeds $384,000, reflecting over 1,229 hours with attorney's rates between $300-$450 and paralegal rates of $150 per hour. (Dooley Decl., at ¶ 16). The value of Class Counsel's services on an hourly basis weighs in Class Counsel's favor.

For the same reason, Class Counsel's requested fee is supported by the lodestar cross-check. Class Counsel's hourly rates, which are $150 for paralegals, $300 for associates, and $400-$450 for partners, are reasonable for this market and this type of litigation. *See Carr*, 2018 WL

15

7508650, at *5 (finding hourly rates ranging from $395 to $450/hour to be reasonable); *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, No. 1:08-CV-605, 2010 WL 1751995, at *4 (N.D. Ohio Apr. 30, 2010) (court approved rates ranging from $250-$450/hour for attorneys and $110-$150/hour for paralegals). The total time spent litigating this case was divided among three attorneys and their paraprofessionals, all with experience in class action litigation. (Dooley Decl., at ¶¶ 2-16). The extensive time put into the case reflects the vigorous advocacy from the Parties, which included significant discovery and contested motion practice and trial preparation. Moreover, this time does not include the full time spent by Class Counsel preparing the final approval papers or preparing for the final fairness hearing. It also does not contemplate the future time that Class Counsel will spend addressing Class Members' concerns after the settlement closes. (*Id.*)

At this juncture, Class Counsel's lodestar equates to a lodestar multiplier of 0.57 when balanced against Class Counsel's requested $200,000.00 fee. In *Salinas v. U.S. Xpress Enterprises, Inc.*, the Court approved a fee award of 40% of the settlement fund, in part because plaintiffs' counsel's lodestar multiplier was substantially lower than 1 and counsel's requested fee had conceded several hundred thousand dollars. 2018 WL 1477127, at *7 (approving attorney's fee award of 40% where counsel's lodestar was 0.61). For these same reasons, and the factors outlined above, Class Counsel seek an award of $200,000, which involves a small increase above the customary percentage-of-fund award to 36.36%. *See In re U.S. Bancorp. Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (concluding that district court did not abuse its discretion by applying percentage of the fund method to award 36% of common fund). Class Counsel believe the complex nature of the litigation and substantial recovery on behalf of the Class, at the risk of no recovery at all, warrants the slightly higher percentage.

16

**C. Class Counsel's requested reimbursement for litigation expenses should be approved.**

Class Counsel also seek reimbursement for their litigation costs as provided in the Amended Stipulation of Settlement. (Doc. 111-1, at ¶ 8.4). "Many circuits – including this one – have found that an award of 'reasonable attorney fees' 'includes the authority to award those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client in the course of providing legal services.'" *Smith v. LexisNexis Screening Solutions, Inc.*, No. , 2015 WL 9459724, at *5 (E.D. Mich. Dec. 28, 2015) (citations omitted); *See also* 15 U.S.C. § 1693m(3) (providing for the recovery of the "costs of the action, together with a reasonable attorney's fee as determined by the court.") Reimbursable expenses include "travel, reasonable photocopying, computer-assisted research, postage and courier-services" and other litigation-related costs. *Id.*; *see also Carr*, 2018 WL 7508650, at *6.

Class Counsel's costs total $23,941.77, which means Class Counsel's total request for fees and costs is over $25,000 less than provided for in the Stipulation and conveyed to Class Members. (Dooley Decl., at ¶ 17). Class Counsel's costs include filing fees, deposition-related costs, legal research, document management and other discovery-related costs. (*Id.*) These expenses were reasonably incurred by Class Counsel during the litigation, and the Court should approve the reimbursement of these expenses.

## V.   CONCLUSION

For the foregoing reasons, Humphrey respectfully request the Court enter an Order finally approving the Amended Stipulation of Settlement (Doc. 111-1), granting Humphrey's requested service award of $15,000, granting Class Counsel's requested attorney's fees of $200,000 and reimbursing Class Counsel for its litigation expenses totaling $23,941.77, approving the

Settlement Administrator's costs of $223,598.01, and approving Towards Employment, Inc. as the

*cy pres* beneficiary.

O'TOOLE, McLAUGHLIN, DOOLEY
& PECORA CO., LPA

/s/       Matthew A. Dooley
Matthew A. Dooley (0081482)
Ryan M. Gembala (79431)
Stephen M. Bosak (92443)
5455 Detroit Road
Sheffield Village, Ohio 44054
Telephone:      (440) 930-4001
Facsimile:      (440) 394-7208
Email:          mdooley@omdplaw.com
                rgembala@omdplaw.com
                sbosak@omdplaw.com
*Class Counsel*

## CERTIFICATE OF COMPLIANCE

In accordance with L.R. 7.1(f), the undersigned counsel certifies that this case has been

assigned to the Standard Track and that the memorandum adheres to the page limitations set forth

in the Local Rules.

/s/       Matthew A. Dooley
Matthew A. Dooley (0081482)
*Counsel for Plaintiff and the putative classes*

18