UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

---

AMBER HUMPHREY,
*On behalf of herself and the class*,

    Plaintiff,

vs.

STORED VALUE CARDS, d/b/a
NUMI FINANCIAL, et al.,

    Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:

CASE NO. 1:18-cv-01050

OPINION & ORDER
[Resolving Doc. 117]

---

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

In this class action, Plaintiff Amber Humphrey sued Defendants Stored Value Cards ("Numi Financial") and Republic Bank & Trust Company ("Republic Bank") for issuing unsolicited debit cards in violation of the Electronic Funds Transfer Act and Ohio law.[1] Previously, the Court certified the Class[2] and preliminarily approved the proposed Class settlement agreement.[3]

Now, Plaintiff moves for final settlement agreement approval, attorney's fees and costs for Class Counsel, and a class representative incentive payment.[4] Defendants do not oppose.

For the following reasons, the Court **APPROVES** the class settlement agreement and administration, **GRANTS** Plaintiff's motion for attorney's fees and costs, and **GRANTS IN PART** Plaintiff's motion for an incentive payment.

---

[1] Doc. 22.
[2] Doc. 55.
[3] Doc. 112.
[4] Doc. 117.

Case No. 1:18-cv-1050
GWIN, J.

I. Background

Plaintiff Humphrey served a brief jail sentence. When she arrived at the Lorain County Jail, she had sixty dollars on her person. Jail officials placed Plaintiff Humphrey's cash in an inmate trust account. Upon Plaintiff Humphrey's release from jail, officials, however, did not return Humphrey's cash. Instead, jail officials gave Plaintiff Humphrey an activated, prepaid debit card that held her remaining account balance.[5] The prepaid card that Plaintiff received charged high fees, including a $5.95 monthly maintenance fee, a $2.95 ATM fee, and a $1.50 balance inquiry fee.[6]

Defendant Republic Bank oversees the prepaid debit card program.[7] Defendant Numi Financial services the cards.[8]

Plaintiff Humphrey sued Defendants Numi Financial and Republic Bank on behalf of herself and all those similarly situated, claiming Defendants' prepaid debit card program violated the Electronic Funds Transfer Act and Ohio law.[9]

In November 2018, the Court certified three Rule 23(b)(3) classes: (1) the Electronic Funds Transfer Act Class, (2) the Ohio Conversion Class, and (3) the Ohio Unjust Enrichment Class.[10]

In January 2019, the Court denied Defendants' motion to dismiss and partially granted and partially denied Defendants' motion for summary judgment.[11] The Court granted summary judgment in Defendants' favor for Plaintiff's claim that Defendants' prepaid cards

---

[5] Doc. 22 at 5–6.
[6] Doc. 51-13.
[7] Doc. 51-17.
[8] Doc. 67.
[9] Doc. 22.
[10] Doc. 55.
[11] Doc. 67.

Case No. 1:18-cv-1050
GWIN, J.

violated the Electronic Funds Transfer Act's prohibition on general-use prepaid cards. But the Court denied summary judgment for Plaintiff's claims that Defendants' prepaid cards violated the Electronic Funds Transfer Act's prohibition on the unauthorized issuance of debit cards and Ohio law.[12]

In April 2019, the Court granted partial summary judgment in Plaintiff's favor for their remaining Electronic Funds Transfer Act claim.[13] Moreover, the Court certified a question for interlocutory appeal:

> Whether a bank account holding pooled inmate card funds 'is a demand deposit (checking), savings, or other consumer asset account (other than an occasional or incidental credit balance in a credit plan) held directly or indirectly by a financial institution and established primarily for personal, family, or household purposes.'[14]

Defendants' interlocutory appeal is pending with the Sixth Circuit.[15]

In July 2019, the parties reached a settlement with Magistrate Judge Ruiz's assistance.[16] In May 2020, the Court preliminarily approved the amended settlement agreement.[17] On October 22, 2020, the Court held a fairness hearing.[18]

Now, Plaintiff brings an unopposed motion for final approval of the settlement agreement. Plaintiff also moves for attorney's fees and costs and a class representative incentive payment.[19]

---

[12] Doc. 67.
[13] Doc. 82.
[14] *Id.* at 5.
[15] Doc. 88.
[16] Doc. 117 at 1–2. In April 2020, the parties submitted an amended settlement agreement. *See* Doc. 111.
[17] Doc. 112.
[18] Doc. 118.
[19] Doc. 117.

Case No. 1:18-cv-1050
GWIN, J.

### A. The Settlement Agreement

Defendants have agreed to establish a $550,000 fund to pay: (1) Class Members who filed claims, (2) the costs associated with notifying the Class Members and administering the settlement, (3) attorney's fees and litigation expenses, and (4) a service payment for Plaintiff Humphrey.[20]

The Settlement Class includes:

> All persons in the United States who were taken into custody at a jail, correctional facility, detainment center, or any other law enforcement facility, and upon release were issued a pre-activated debit card by Defendants to access a bank account containing any funds remaining in their inmate trust account between April 1, 2017 and April 30, 2018.[21]

In total, the final Class comprises 153,688 individuals.[22]

The settlement administrator, American Legal Claims Services, estimates its cost to be $223,598.01.[23] Class Counsel asks the Court to award them $200,000 in attorney's fees and $23,941.77 in litigation expenses.[24] Finally, Plaintiff Humphrey seeks a $15,000 service award.[25] All told, this leaves $87,460.22 for Class Members.[26]

Settlement Class Members have filed 1,771 "timely claims" and five "untimely claims"[27]—a claim rate just over 1%.[28] Based on this claim rate, each Class Members is set

---

[20] Doc. 117.
[21] Doc. 111-1 at 7.
[22] Doc. 117-2.
[23] *Id.*
[24] Doc. 117.
[25] *Id.*
[26] Because the Court will award Plaintiff Humphrey a $10,000 incentive award, there will be $92,460.22 remaining in the settlement fund for Class Members. *See infra* Part II.D.
[27] Doc. 117-2.
[28] Doc. 117.

- 4 -

Case No. 1:18-cv-1050
GWIN, J.

to receive about $49,[29] which likely exceeds the fees they incurred from Defendants' prepaid debit card program.[30]

## II. Discussion

Before parties can settle a class action dispute, the court must direct notice to the Class Members, hold a fairness hearing, and find that the proposed settlement is "fair, reasonable, and adequate."[31]

### A. The Settlement Notice Satisfies Constitutional Requirements and Rule 23

The Due Process Clause demands that notice is "reasonably calculated to reach interested parties."[32] Likewise, Rule 23 calls for "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[33]

To begin the notice process, the settlement administrator used "an industry leader in data fusion," the United States Postal Service's National Change of Address database, and skip-tracing to obtain each Class Members' current address.[34] Still, the settlement administrator could not determine a valid email or mailing addresses for 12,159 Class Members.[35]

---

[29] With the Court's adjustment to Plaintiff Humphrey's incentive award, Class Members who filed timely claims will receive about $52 each.
[30] *Id.* at 2. ("For example, Plaintiff incurred fees totaling $5.95, which was typical of other Class Members.") *Id.* at 2 n.2.
[31] Fed. R. Civ. P. 23(e).
[32] *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008) (quoting *Karkoukli's, Inc. v. Dohnay*, 409 F.3d 279, 283 (6th Cir. 2005)).
[33] Fed. R. Civ. P. 23(c)(2)(B).
[34] Doc. 117-2.
[35] *Id.*

Case No. 1:18-cv-1050
GWIN, J.

Then, the settlement administrator emailed the settlement notice to 72,438 Class Members. Of those 72,438 emails, the settlement administrator received confirmation that 62,556 were delivered.[36] Similarly, the settlement administrator mailed a settlement notice post-card to 141,436 Class Members via USPS first-class mail.[37] The settlement administrator re-mailed any class notices that USPS returned with a forwarding address. Nearly 41% of Class Members received the settlement notice through email and about 86% of Class Members received the settlement notice through paper mail.[38]

In addition to email and mail, the settlement administrator also ran a targeted online marketing campaign using Facebook ads.[39] Further, the settlement administrator created a settlement website where Class Members could view the settlement notice, find the relevant Court filings, and submit claims.[40] Finally, the settlement administrator established a toll-free number that answered frequently asked questions.[41]

The Court previously approved the settlement notice form and content.[42] Now, the Court approves the settlement notice distribution. The Court finds the parties' notice process complies with the Due Process Clause and Rule 23.

### B. The Settlement Is Fair, Reasonable, and Adequate

To determine whether a class action settlement is fair, reasonable, and adequate, Rule 23 directs courts to evaluate whether:

> (A) the class representatives and class counsel have adequately represented the class;

---

[36] *Id.*
[37] *Id.*
[38] Doc. 117-2.
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] Doc. 112 at 3 (referencing Doc. 111-2).

Case No. 1:18-cv-1050
GWIN, J.

> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>   (i) the costs, risks, and delay of trial and appeal;
>   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-members claims;
>   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>   (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.[43]

In addition, courts also look to circuit specific factors.[44] The Sixth Circuit instructs courts to assess:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.[45]

The Court considers the Rule 23 and Sixth Circuit factors below, combining any that overlap.

### 1. Plaintiff Humphrey and Class Counsel have Adequately Represented the Class

Prior to negotiating this settlement, Plaintiff Humphrey and Class Counsel vigorously litigated the Class's claims. Indeed, the Court granted Plaintiff's class certification motion and partially granted her summary judgment motion. The Court is persuaded that Plaintiff and Class Counsel's decision to pursue settlement was based on "an adequate information base."[46]

---

[43] Fed. R. Civ. P. 23(e)(2).
[44] Fed. R. Civ. P. 23(e)(2), Advisory Committee Notes, 2018 Amendments ("The goal of this amendment is not to displace any [circuit court] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").
[45] *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013) (quoting *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th. Cir. 2007)).
[46] Fed. R. Civ. P. 23(e)(2)(A)–(B), Advisory Committee Notes, 2018 Amendments.

Case No. 1:18-cv-1050
GWIN, J.

Moreover, only two Class Members have opted out of the settlement and only one has "objected."[47] The Class's reaction to settlement suggests that Plaintiff and counsel adequately represented the Class's interest.

This factor weighs in favor of approving the settlement agreement.

### 2. The Class Settlement Was Negotiated at Arm's Length and There Is Little Risk of Fraud or Collusion

Class representatives and counsel are presumed to have "handled their responsibilities with the independent vigor that the adversarial process demands" unless there is evidence to the contrary.[48] But when there is a clear sailing provision in a settlement agreement, the court has "a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class."[49]

In this case, the settlement agreement contains a "clear-sailing provision."[50] Still, the Court is persuaded that neither Plaintiff Humphrey nor Class Counsel abandoned their duties to the Class in negotiating this settlement.[51] As discussed in more detail below, Class Counsel's fee request is reasonable and appropriate in light of the time and hard work they put into this case.[52] And the Class Members who filed claims will recover more than the financial injury they likely suffered.[53] Moreover, the parties engaged in substantial discovery

---

[47] Joseph Lisciandro's objection is not directed at the settlement. Rather, it outlines concerns with Defendants (e.g., "researching 'Numi'… not BBB accredited - - offered 'credit line' - - then retracted without notice") (unaltered) and other concerns entirely unrelated to this litigation (e.g., "note, during 'prizon zentence' [sic] - - [illegible] tortured, beaten and rendered."). Doc. 117-3.

[48] *UAW*, 497 F.3d at 628.

[49] *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 291 (6th Cir. 2016) (citing *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011)).

[50] Doc. 111-1 at 14–15 (stipulating that Defendants will not object to Class Counsel's fee request so long as they ask for $250,000 or less).

[51] *See Gascho*, 822 F.3d at 291 (holding that a district court did not abuse its discretion when it approved a class settlement with a clear sailing provision).

[52] *See infra* Part II.C.

[53] *See supra* note 28 and accompanying text.

- 8 -

Case No. 1:18-cv-1050
GWIN, J.

and motions practice before beginning settlement discussions. Finally, the parties negotiated this settlement with a wholly disinterested third-party mediator, Magistrate Judge Ruiz.

This factor weighs in favor of approving the settlement agreement.

### 3. The Class Settlement Provides Adequate Relief to the Class

As the Sixth Circuit has noted, a court "cannot judge the fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement."[54]

While this Court previously partially granted Plaintiff's motion for summary judgment, it is undeniable that the Class still faces a risk that it will recover nothing. The Class's claims rely on a novel legal theory, and Defendants' interlocutory appeal challenging this Court's opinion is pending in the Sixth Circuit.

Moreover, the Electronic Funds Transfer Act limits class recovery to one percent of the Defendants' net worth or $500,000, whichever is lower, plus attorney's costs and fees.[55] Therefore, Defendants' agreement to establish a $550,000 fund—to cover Class claims, administrative costs, attorney's fees and costs, and a class representative incentive fee—provides substantial relief to the Class. Plus, the settlement ends the litigation and allows the Class to recover now; the Class need not wait until after the appeal and any further proceedings in this Court, assuming they would be successful.

Additionally, both Class Counsel, who have experience in consumer protection and class action litigation,[56] and Plaintiff Humphrey support this settlement.[57] And courts give

---

[54] *UAW*, 497 F.3d at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)) (internal quotation marks omitted).
[55] 15 U.S.C. § 1693m(a)(2)(B)–(3).
[56] See Doc. 32-1 at 4–5; Doc. 117-1 at 4–5.
[57] Doc. 117 at 10.

Case No. 1:18-cv-1050
GWIN, J.

"weight to the belief of experienced counsel that a settlement is in the best interest of the class."[58]

This factor weighs in favor of approving the settlement agreement.

### 4. The Proposal Treats Class Members Equitably Relative to Each Other and the Distribution Plan Is Reasonable

All Class Members who submitted a timely claim will receive a pro rata share of the settlement fund, less the payments to the Class administrator, Class Counsel, and Plaintiff Humphrey.[59] Humphrey will receive an additional class representative incentive award[60] to compensate her for the extensive time she spent pursuing this case for the Class. But this is not a case in which "the settlement gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed Class Members."[61] The Class Members who submitted claims will each receive about $49,[62] which is likely greater than the fees they incurred from Defendants' debit card program.[63]

This factor weighs in favor of approving the settlement agreement.

---

[58] See *Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 WL 1945144, *7 (S.D. Ohio May 30, 2012); see also *Bronson v. Bd. of Educ. of City Sch. Dist. of City of Cincinnati*, 604 F.Supp. 68, 78 (S.D. Ohio 1984) ("Based on the exhaustive pretrial proceedings in this case and the experience of counsel, this Court pays particular attention to the opinion of counsel that the proposed settlement agreement is fair, adequate and reasonable.").

[59] Any remaining settlement funds will go to a *cy pres* beneficiary, Towards Employment, Inc. The organization is "an Ohio-based nonprofit that has specific programming aimed at assisting the formerly incarcerated with finding gainful employment." Doc. 117 at 11.

[60] The Sixth Circuit has declined to consider whether an incentive award alone is sufficient to render a class settlement unfair. See *Vassalle*, 708 F.3d at 756 ("Because we find the settlement is unfair to the unnamed class members in light of Midland's exoneration of the named plaintiffs' debts, it is unnecessary for us to pass on the appropriateness of incentive awards.").

[61] *Vassalle*, 708 F.3d at 755.

[62] The Class Members will receive around $52. See *supra* note 29 and accompanying text.

[63] See *supra* note 28 and accompanying text.

- 10 -

Case No. 1:18-cv-1050
GWIN, J.

### 5. The Public Interest Supports the Settlement

"Courts have held that there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources."[64] In this case, the settlement agreement will end more than two-and-a-half years of litigation and provide the Class Members with meaningful relief.

This factor weighs in favor of approving the settlement agreement.

After holding a fairness hearing and considering the above factors, the Court finds the proposed settlement agreement is fair, reasonable, and adequate. Resultingly, the Court approves the settlement, including its administration and costs.

### C. Class Counsel's Attorney's Fees and Costs Request is Reasonable[65]

#### 1. Attorney's Fees

In common fund cases, the Sixth Circuit requires only that attorney's fees are "reasonable under the circumstances."[66] A district court has discretion to award a reasonable fee using either the lodestar or percentage-of-the-fund method.[67] "The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved."[68]

---

[64] *Does 1-2 v. Déjà Vu Serv., Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)) (internal quotation marks omitted).
[65] In total, Class Counsel requests $223,941.77 in attorney's fees and litigation costs, which is less than the $250,000 they are permitted to seek under the settlement agreement. Doc. 117.
[66] *Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).
[67] *Id.*
[68] *Id.*

- 11 -

Case No. 1:18-cv-1050
GWIN, J.

When awarding fees, the court "must articulate the reasons for adopting a particular methodology and the factors considered in arriving at the fee."[69] Relevant factors may include:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.[70]

Class Counsel requests $200,000, or about 36% of the settlement fund.

The Court adopts the percentage-of-the-fund method and finds that Class Counsel's request is reasonable. Class Counsel spent more than 900 hours litigating this case, and achieved great results, including Class certification and partial summary judgment. Most importantly, Class Counsel secured a $550,000 settlement fund, which is substantial in light of the Electronic Funds Transfer Act's damages cap.

Moreover, Class Counsel's lodestar confirms that a $200,000 award is reasonable in this case. Class Counsel spent over 900 attorney hours and 300 paralegal hours litigating this case.[71] As a result, they calculate their total lodestar to be more than $380,000—nearly 70% of the settlement fund.[72] Even if the Court used the median hourly rate for Ohio attorneys and paralegals,[73] Class Counsel's lodestar would still be nearly $260,000.[74]

---

[69] *Gascho*, 822 F.3d at 280 ((citing *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (quoting *Rawlings*, 9. F.3d at 516)) (internal quotation marks omitted).

[70] *Id.* (quoting *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)).

[71] Doc. 117-1.

[72] Class Counsel used hourly rates of $250-$450 for attorneys and $125-$175 for paralegals. *Id.*

[73] In 2019, the median hourly rate for Ohio attorneys was $250. Likewise, an hourly rate around $100 seemed most common for legal assistants at a firm of Class Counsel's size. *See* The Ohio State Bar Ass'n, *The Economics of Law Practice in Ohio in 2019*, at 44; Doc. 117-1.

[74] $250 x 912.25 hours = $228,062.50. $100 x 317.35 hours = $31,735. $228,062.50 + $31,735 = $259,797.50.

Case No. 1:18-cv-1050
GWIN, J.

Finally, Class Counsel took this case on a contingent basis, thus bearing the risk of non-recovery.[75] Society has an interest in fairly compensating attorneys in consumer financial protection litigation. And both Class and Defense counsel are skilled and experienced lawyers who vigorously litigated this case.

Awarding Class Counsel $200,00 adequately compensates them for their work and the results they achieved for the Class without unduly eroding the settlement fund.

### 2. Litigation Expenses

Courts in the Sixth Circuit have held that in common fund cases, Class Counsel can seek reimbursement "for all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement."[76] However, the expenses should be of the kind "routinely billed by attorneys to paying clients in similar cases."[77]

Class Counsel requests reimbursement for $23,941.77 in litigation costs. Class Counsel's expenses include photocopies, database maintenance and online legal research, filing fees, transcripts, transportation, and couriers. The Court finds these expenses were reasonable and are appropriately passed on to the Class.[78]

### D. A $10,000 Class Representative Incentive Award is Reasonable

Incentive awards are payments to class representatives in addition to their recovery as a class member. The awards are meant to encourage class members to serve as class

---

[75] Doc. 117 at 15.
[76] In re Cardizem, 218 F.R.D. at 535; see also In re Polyurethane Foam Antitrust Litig., 135 F.Supp.3d 679, 694 (N.D. Ohio 2015); In re Delphi Corp. Sec., Derivative & "ERISA" Litig., 248 F.R.D. 483, 504 (E.D Mich. 2008); N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co., 315 F.R.D. 226, 244 (E.D. Mich. 2016).
[77] In re Cardizem, 218 F.R.D. at 535.
[78] New England Health Care Emp. Pension Fund v. Fruit of the Loom, Inc., 234 F.R.D. 627, 635 (W.D. Ky. 2006).

Case No. 1:18-cv-1050
GWIN, J.

representatives and compensate them for their role in the litigation. While the Sixth Circuit has never approved incentive awards outright, it has acknowledged that "there may be circumstances where incentive awards are appropriate."[79] Courts that permit incentive awards scrutinize them carefully to ensure they do not "lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain."[80]

The settlement agreement permits Plaintiff Humphrey to request a $15,000 incentive award. In support of her request, Humphrey estimates that she dedicated nearly 80 hours to this case, preparing for and attending a day-long deposition, participating in mediation, and appearing at Court conferences.

Based on the extensive time Humphrey spent serving as a class representative, the Court finds a $10,000 incentive award appropriate. An award amounting to $125 per hour is sufficient to compensate Humphrey, but not so great as to encourage future class representatives to ignore the interests of the class they represent.

### III. Conclusion

For the foregoing reasons, the Court **APPROVES** the class settlement agreement and administration, **GRANTS** Plaintiff's motion for attorney's fees and costs, and **GRANTS IN PART** Plaintiff's motion for an incentive payment.

IT IS SO ORDERED.

Dated: January 12, 2020　　　　　　　　　　s/　　James S. Gwin
　　　　　　　　　　　　　　　　　　　　　　JAMES S. GWIN
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

---

[79] *Vassalle*, 708 F.3d at 756 (quoting *Hadix v. Johnson*, 322 F.3d 895, 897–98 (6th Cir. 2003)).

[80] *Hadix*, 322 F.3d at 897.

- 14 -